NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARAMA THOMAS,<br><br>            Plaintiff,<br><br>                v.<br><br>NEWARK POLICE DEPARTMENT, SUPERIOR OFFICERS ASSOCIATION, IVONNE ROMAN, GARRY F. MCCARTHY, DENNIS SANDERS, RICHARD CUCCOLO, CRYSTAL BURROUGHES, BEATRICE GOLDEN, JOHN SIINO, CAROLINE CLARK, and DANIEL ZIESER,<br><br>            Defendants. | Civil Action No. 3:08-cv-02452 (PGS)<br><br><br>**OPINION** |

This matter comes before the Court on a motion for summary judgment submitted by Defendants, the City of Newark (improperly pled as "Newark Police Department"), and individual police officer defendants: Ivonne Roman, Garry F. McCarthy, Dennis Sanders, Richard Cuccolo, Crystal Burroughes, Beatrice Golden, John Siino, Caroline Clark, and Daniel Zieser.  The Superior Officers Association has not joined in this motion, but they have provided a certification in support of the motion.

Plaintiff's complaint alleges the following causes of action: (1) a violation of 42 U.S.C. § 1983; (2) a violation of 42 U.S.C. § 1985; (3) a violation of 42 U.S.C. § 1988; (4) a violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq.* ("CEPA"); (5) wrongful

discharge in violation of *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980); (6) intentional

infliction of emotional distress; (7) invasion of privacy; (8) breach of express contract; (9) breach

of implied contract; (10) breach of implied covenant of good faith and fair dealing; and (11)

violation of the New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, *et seq*.   Defendants contend

that Plaintiff has not asserted any factual allegations to support the aforementioned causes of

action and therefore Plaintiff's case should be dismissed in its entirety with prejudice.

## I. BACKGROUND

Plaintiff, Karama Thomas ("Thomas"), has served as a police officer for the Newark

Police Department since July 29, 1996.   The basis for this suit arises out of an incident that

occurred on July 18, 2005 when Thomas was a detective in the Taxi Division.   On July 18, 2005,

Thomas was inside of a daycare center located on Chancellor Avenue  when she heard gun shots

fired outside.   From the second floor hallway window, Thomas observed a black male traveling

east on Chancellor Avenue.   Thomas exited the daycare center, gave chase and apprehended the

suspect, Khalil Tutt ("Tutt").   Thomas ordered Tutt to sit on the curb, and observed that Tutt had

two gun shots wounds, and that he was unarmed.   Tutt's sister, Jalisa Tutt, also arrived at the

scene of the arrest, but Thomas ordered her to not go near Tutt.   At the scene, Thomas learned

that two officers, Special Officer Dwayne Reeves and Officer Akia Scott, had been shot at

Chancellor Avenue and Summit Avenue.   Special Officer Reeves was fatally wounded.   Other

officers responded to the scene, handcuffed Tutt, and completed the arrest.   On the same date,

Thomas prepared a Continuation Report detailing the incident.

Approximately two years later in April 2007, Thomas was subpoenaed by the Essex

County prosecutor to testify before a grand jury regarding the Tutt incident.  Thomas appeared, but the prosecution did not need her to testify.  The grand jury indicted Tutt and Hassan Reeds for the murder of Special Officer Reeves.

On September 17, 2007 the trial, *State v. Khalil Tutt a/k/a Omar Tindel*, began before the Hon. Michael R. Casale, J.S.C.  Subsequently, Thomas received both a prosecution and defense trial subpoena.  On September 24, 2007 Thomas appeared at the trial as required by the prosecutor's subpoena, but Assistant Prosecutor Sera informed Thomas that the prosecution would not need her to testify.  On October 4, 2007 Thomas responded to the defense subpoena and was required to testify in court on that day.  Thomas testified that she never lost sight of Tutt from the time she first observed him from the hallway window of the daycare center to when she was chasing him on Chancellor Avenue, she never saw Tutt with a gun, and that she did not allow Jalisa Tutt to approach Tutt.

The next day on October 5, 2007 various news outlets including the Star Ledger, and NJ.com reported on Thomas' testimony.  Thomas asserts that these news stories inaccurately depicted her trial testimony.  Thomas further asserts that the Defendants immediately subjected her to a hostile work environment because the police officers within the Newark Police Department believed her testimony supported the defendant, Khalil Tutt, who allegedly shot and killed a police officer.  At work, Thomas asserts that she did not speak to anyone about her trial testimony because of the news articles.  Other police officers gave her the silent treatment, some expressly refused to work with her, and gave her dirty looks.  On this same date, Defendant, Lt. Ivonne Roman, initiated an internal affairs investigation against Thomas.  Thomas alleges that the investigation was illegal because Defendant, Lt. Dennis Sanders, did not issue an

Investigation of Personnel ("IOP") and the investigation extended into her private affairs such as credit history, past addresses, financial information etc.  The following day, Thomas became ill for several days and did not return to work until October 9, 2007, when she was dispatched to the Alma Flagg School.  At that time, Thomas alleges that she was not backed up by other officers when she apprehended an armed perpetrator, and that she was followed during her assignments by another vehicle within the Newark Police Department.

On October 15, 2007 the jury rendered a verdict of not-guilty for the murder of Special Officer Reeves in the Tutt matter.  However, Tutt was found guilty of reckless manslaughter, among other things.  On this same date at the end of the business day, Defendant, Acting Chief of Police, Daniel Zieser, authorized Thomas to be placed on immediate and indefinite suspension without pay.  Thomas asserts that Defendant, Police Director, Garry F. McCarthy, did not issue an IOP nor a hearing date at the time of the suspension, but Thomas was served with a suspension notice on October 15, 2007.  The suspension notice provided that immediate suspension was necessary to maintain safety, health, and order.  In addition, Thomas was charged with failing to notify her commander that she was subpoenaed as a witness for the defense in a criminal case in violation of Newark Police Department Rules and Regulations 4:4-4.  On October 17, 2007 Lt. Roman interviewed Thomas while she was suspended consistent with department policy, and the ongoing internal affairs investigation.  Thomas admits that during the interview she denied being served with a subpoena for the Grand Jury for the murder of Special Officer Reeves.  On October 19, 2007, within four days of her suspension, Thomas was served with a Preliminary Notice of Disciplinary Action (PNDA), signed by Defendant, Sgt. Beatrice Golden, and the Deputy Police Director, who is not a named defendant.  Thomas was charged

4

with five violations: (1) conduct unbecoming of a public employee for being uncooperative with Assistant Prosecutor ("AP") Bogdanski; (2) failure to cooperate with AP Bogdanski during a pre-grand jury interview; (3) failure to report subpoena by defense in a criminal case to commanding officer; (4) neglect of duty for failure to report the aforementioned subpoena; and (5) false statements made during the October 17, 2007 internal affairs interview that she was never subpoenaed for the Grand Jury and that she never discussed the case with AP Bogdanski.  On October 26, 2007, Thomas was given a due process hearing regarding her suspension consistent with N.J.A.C. 4A:2-2.5, wherein Director McCarthy reinstated Thomas.

In the days following the jury verdict, Defendant, Superior Officers Association ("SOA"), published its  monthly newsletter that included an article titled "A Very Dark Day in Newark" authored by Captain Mark Whitley, which blamed Thomas' testimony as the reason for the not-guilty verdict.  Captain Whitley is not a named defendant in this suit, but in his deposition Mr. Whitley stated that he is a full time union representative for the SOA, and First Vice President, and that he is on paid release from the Newark Police Department to serve in this capacity. Thomas alleges that this article further incited workplace hostility against her.

On October 30, 2007, Defendant, Captain Richard Cuccolo, Commander of the Communications Division, transferred Thomas to central communications and switched her hours from the day shift (8 a.m. to 5 p.m.) to the evening shift (10 p.m. to 6 a.m.) despite her having worked the daytime shift for five years.  However, the transfer did not reduce Thomas' pay or her rank.  Thomas alleges that Captain Cuccolo informed the Star Ledger of her division transfer and shift change.  On November 1, 2007 Thomas filed a formal complaint with Director McCarthy describing her hostile work environment.  On November 5, 2007 Lt. Roman

interviewed Thomas in furtherance of the internal affairs investigation.  On November 6, 2007 Thomas sought psychological treatment from Dr. Susan Fuls due to the mounting pressures from the alleged hostile work environment.  On November 9, 2007 Thomas was served with a second PNDA, which superceded the October 19, 2007 PNDA, and included the same five charges from before plus two additional charges: (1) response to questions during her trial testimony- her responses should have been limited to "yes" or "no" whenever possible; and (2) volunteering information during her trial testimony instead of allowing the prosecutor to guide the questioning.

On November 23, 2007 Thomas filed a second formal complaint that claimed a hostile work environment due to Defendants retaliatory actions, and suggested that Special Officer Reeves may have been shot by his partner, Officer Akia Scott.  On November 27, 2007 Thomas retained counsel.  On December 12, 2007 Dr. Fuls contacted the Newark Police Department to report that Thomas should be placed on "stress leave" and that she was not fit for duty.  On December 13, 2007 Judge Casale, who conducted the Tutt trial, accused Thomas of being a liar in reference to her trial testimony during Tutt's sentencing.  Thereafter, Captain Whitley authored a second article in the SOA titled "Justice From the Bench" agreeing with Judge Casale's remarks about Thomas at the sentencing.  On December 28, 2007 Dr. Guillermo Gallegos performed a fitness for duty examination because of Dr. Fuls December 12th report.  Dr. Gallegos reported to the Newark Police Department that Thomas was not fit for duty, and thereafter Thomas was instructed to surrender her weapon.

On January 10, 2008 Thomas applied for disability retirement with an effective date of July 1, 2008.  On February 29, 2008 Thomas was served with a third PNDA signed by Sgt.

Golden, regarding her inability to perform her work duties.  Thomas was charged with four

violations associated with failure to complete the psychological evaluation conducted by Dr.

Gallegos, the City of Newark's licensed psychologist.  On February 29, 2008 Thomas

surrendered her personal off-duty weapon.

On February 25, 2008 Defendant, Sgt. John Sinno, informed Thomas that he was

assigned to investigate her November 1, 2007 hostile work environment complaint.  Due to an

alleged lack of communication with Thomas, Sgt. Sinno closed the investigation on March 3,

2008.  On March 18, 2008, Sgt. Golden served Thomas with additional charges for failure to

respond to Sgt. Sinno's investigation.  Thomas notes that her November 23, 2007 complaint was

never investigated.  On April 3, 2008 and April 8, 2008 a Trial Board composed of three police

captains held a hearing to review the charges against Thomas.  On April 8, 2008 the Trial Board

decided that Thomas was guilty of all charges, except two: (1) conduct unbecoming of an officer,

and (2) failure to cooperate.  The Trial Board found that there was nothing wrong with Thomas'

conduct or testimony during trial and that she fully cooperated with AP Bogdanksi during the

pre-grand jury interview.   Thomas was ultimately terminated on April 8, 2008 based on Dr.

Gallegos' report that she was unfit for duty, but the Trial Board held that  if Thomas were to ever

be reinstated her penalty would be an additional 20 day suspension.

On July 16, 2008 the Division of Pension and Benefits notified Thomas that her

application for accidental disability retirement was denied, but she was approved for ordinary

disability effective May 1, 2008.  Thomas also appealed the Trial Board's decision and an Office

of Administrative Law ("OAL") hearing was held on July 18, 2008.  On December 16, 2009,

OAL Judge Strauss issued a decision and Order, which affirmed that the disciplinary charges

filed against Thomas were appropriate for her conduct and noted that there was no suggestion that her trial testimony was not truthful.  Judge Strauss also modified Thomas' termination to a resignation in good standing effective April 8, 2008 in recognition of her unblemished disciplinary record since her entry into service in1996 aside from two reprimands in 1999 and 2000.

On January 29, 2010 the Civil Service Commission ("CSC") upheld Judge Strauss' decision.  Currently, Thomas has withdrawn her application for accident disability retirement and is applying for reinstatement with the Newark Police Department.

## II.  DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists.  *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement.  *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate."  *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).  The court will apply this standard to each of the Plaintiff's claims.

**B. Section 1983 Claims**

Plaintiff argues in her first count of the complaint that Defendants violated her civil rights under 42 U.S.C. § 1983.  To prevail on this claim and survive Defendants' motion for summary judgment, Plaintiff must establish that the Defendants acted under color of state law to deprive her of constitutional or federal rights.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but provides a remedy for the violation of those rights.  *Id.*  Plaintiff alleges that the Defendants violated her First Amendment rights by retaliating against her for her trial testimony in the Tutt matter.  Additionally, Plaintiff argues that

her Fourteenth Amendment right was violated when she was suspended, transferred to the communications division, and eventually terminated without adequate due process.

It is undisputed that the Defendants acted under color of state law.[1]  The issue is whether Defendants violated Plaintiff's First Amendment or Fourteenth Amendment rights.

### 1. *Monell* Liability for City of Newark (Newark Police Department)

Defendants argue that Plaintiff's § 1983 action cannot proceed against the City of Newark, pled here as the Newark Police Department, because Plaintiff has failed to demonstrate that the City of Newark had a custom or policy that violated her constitutional rights.

Municipalities can be sued directly under § 1983 for monetary relief when the execution of a policy, ordinance, regulation or custom results in a deprivation of constitutional rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S.  658, 690 (1978); *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).  A municipality cannot be held liable for damages under § 1983 on a vicarious liability theory.  *Monell, 436 U.S.* at 694.  To determine municipal liability, the plaintiff must demonstrate that there is a direct causal link between a municipal policy, like an ordinance or regulation, or a custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-86 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 471-81(1986);  *Carswell*, 381 F.3d at 244. A plaintiff may also demonstrate that a person with final policy making authority made a decision that had a direct causal link to the alleged constitutional violation, which also holds the municipality liable.  *Pembaur*, 475 U.S. at 481.  The decision by a final policy making authority

---

[1] It cannot be determined from the facts presented if the Superior Officers Association is a state actor or an independent organization, therefore it remains a question of fact.

could be a one time occurrence or repeated.  *Id.*  Plaintiff argues that in this case Director

McCarthy has final policy making authority and his actions of authorizing discipline, transferring

her to the communications division, and ultimately terminating her were a series of decisions that

deprived her of constitutional rights, and therefore the City of Newark can be held liable.

On these facts, the City of Newark may be held liable by a decision of a final policy

making authority, as the Plaintiff does not identify a policy or custom adopted by the City of

Newark that led to alleged First Amendment retaliation.  Whether an official has final policy

making authority is a question of law that is to be determined by reference to the state and local

laws.  *Praprotnik*, 485 U.S. at 124.  According to the City of Newark, Revised General

Ordinances, Title II Chapter 20 Section 1.2, the Police Director is designated as the "appropriate

authority" over the Police Department as defined in N.J.S.A. 40A:14-118, and has the power to

"adopt and promulgate Rules and Regulations and the overall policy for the government of the

Police Department and for the discipline of its members . . .".  City of Newark, Revised General

Ordinances.[2]  Additionally, Director McCarthy stated in his deposition testimony that he has

"overall command of the Newark Police Department, policies, procedures, guidelines, discipline,

operations, the whole ball of wax."   Therefore, the Court can conclude that Director McCarthy

has final policy making authority since he alone has the authority to make rules and regulations

for the Newark Police Department as set forth in his deposition testimony and the City of Newark

General Ordinances.  *See also Garcia v. City of Newark,* 2011 U.S. Dist. LEXIS 16624, *13-14

(D.N.J. 2007)(finding that the Newark Police Director has final decision making authority after

---

[2] *available at*
http://70.168.205.112/newark_nj/lpext.dll?f=templates&fn=site_main-j.htm&2.0

reviewing the Newark Police Dept. Rules and Regulations).  Accordingly, the Plaintiff has

presented sufficient evidence for a reasonable jury to find that the City of Newark is liable for

potential constitutional violations through Director McCarthy's decisions being carried out by his

subordinate employees within the Newark Police Department.

### 2. First Amendment Retaliation

 A plaintiff may bring a First Amendment retaliation claim under § 1983 when a state

actor retaliates against the plaintiff based on the plaintiff's protected speech.  *Bradshaw v. Twp.*

*of Middletown*, 145 F. App'x. 763, 766-67 (3d Cir. 2005).  To prove a First Amendment

retaliation claim, the plaintiff must demonstrate (1) the speech was protected by the First

Amendment because it addressed a matter of public concern; and (2) the protected speech was a

substantial or motivating factor in the alleged retaliation against the plaintiff.  *Reilly v. City of*

*Atlantic City*, 532 F.3d 216, 224 (3d Cir. 2008).  The first factor is a question of law while the

second factor is a question of fact.  *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)(citing

*Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)).  The plaintiff's speech also must

be balanced against the government employer's countervailing interest in promoting the

efficiency of public services it performs through its employees, known as the *Pickering* balance.

*Pickering v. Bd. Of Educ.,* 391 U.S. 563 (1968); *Reilly,* 532 F.3d at 224.  If the plaintiff is able to

prove these elements then the burden shifts to the employer to prove that the alleged retaliatory

action would have occurred absent the protected speech.  *See Reilly*, 532 F.3d at 232.  The

plaintiff may then rebut the employer's rationale by arguing that the discipline imposed was a

pretext for retaliation.  *Id*.  Here, the Defendants argue that Plaintiff's testimony from the Tutt

trial is not protected speech according to *Garcetti* because Plaintiff's testimony related to her

official duties as a police officer with relevant information to the criminal trial. Defendants contend that because Plaintiff's speech is not protected, they do not address the second element of the claim.

Regarding the first element, the First Amendment protects a public employee's speech if the employee speaks as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Generally, when public employees make statements about their official duties they are not speaking as citizens with First Amendment protection and therefore the government employer may have "adequate justification" to discipline the public employee as a result of the statements made. *Id.* at 421; *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Thus, the Court must determine whether Thomas' trial testimony was employee speech involving her official duties or protected citizen speech on a matter of public concern.

In *Reilly v. City of Atlantic City*, the Third Circuit specifically addressed the issue of whether a public employee's trial testimony is protected speech. 532 F.3d 216, 231 (3d Cir. 2008). The court relied on the settled principle that the "duty to testify has long been recognized as a basic obligation that every citizen owes his government,"and held that a public employee's trial testimony is protected speech. *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974)). The court's rationale was that even though "an employee's official responsibilities provided the initial impetus to appear in court [it] is immaterial to his/her independent obligation as a citizen to testify truthfully." *Id.* The court distinguished *Garcetti* because the speech at issue there was the plaintiff's memo on whether a search warrant was valid, which was held to be not protected speech because the memo was prepared pursuant to plaintiff's official duties as a Deputy district attorney. *Id.* The issue of whether the plaintiff's trial testimony was protected

13

speech was remanded.  *Id.*  The court concluded that a public employee's trial testimony is

citizen speech and is "not foreclosed by the 'official duties' doctrine enunciated in *Garcetti*."   *Id.*

The relevant facts to this claim is that Plaintiff was a public employee as a police officer

with the Newark Police Department at the time she testified at the Tutt trial.  Although Plaintiff's

testimony related to her official duties as a police officer, her speech was nonetheless protected

as a citizen who testified truthfully to aid in law enforcement, which the Third Circuit has held is

a matter of public concern.  *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008).  In

applying the *Pickering* balance, Defendants did not allege that Plaintiff's testimony impaired the

proper performance of the Newark Police Department.  Therefore the Court finds that Plaintiff's

testimony does not outweigh the government's interest in maintaining order to carry out public

functions.  This case can also be distinguished from other cases where public employees

criticized the government entity such as *Pickering* where the plaintiff school teacher wrote a

letter to the local newspaper in opposition to the Board of Education's tax proposal or *Reilly*,

where the basis of the public employee's testimony was regarding police corruption within the

Atlantic City Police Department.  The Court further finds that Plaintiff's complaints filed with

the Newark Police Department are not protected speech because it relates to matters of personal

interest regarding her own employment situation and are not of public concern.  *Kadetsky v. Egg*

*Harbor Twp. Bd. of Educ.*, 82 F. Supp. 2d 327, 336 (D. N.J. 1999)(holding that "when an

employee [comments] upon matters only of personal interest, that public employee speaks not as

a citizen upon matters of public policy.").

Having determined that Plaintiff's trial testimony was protected speech, the next inquiry

is whether the facts demonstrate that her testimony was a substantial or motivating factor for the

Defendants alleged retaliation.  Courts have looked at circumstantial evidence such as knowledge of the speech, timing between the speech and the retaliation, and whether the discipline imposed was more severe than warranted.  *Reilly*, 532 F.3d at 232-33.  In this case, the Defendants were aware of Plaintiff's testimony since it was publicized in the newspapers.  The day after Plaintiff's testimony, an internal affairs investigation was initiated against her, and within a six month time frame disciplinary charges were filed.  The alleged intra office attitude also may have been the cause of her psychiatric disability.  These facts demonstrate that there are genuine issues of material fact in dispute for the jury to decide (a) whether Plaintiff's testimony was a substantial or motivating factor for the discipline imposed by the Defendants, (b) whether the Defendants had adequate justification for the discipline imposed, or (c) if the discipline imposed was in fact a pretext to the alleged retaliation.  Therefore, summary judgment as to Thomas' First Amendment retaliation claim is denied.

### 3. Fourteenth Amendment Procedural Due Process

Defendants note that Plaintiff failed to include a due process cause of action in the complaint, but nonetheless argue that Plaintiff was provided with significant due process protections that the Plaintiff either exercised or waived.  A § 1983 claim for violation of procedural due process requires a plaintiff to prove (1) the state actor deprived the plaintiff of Fourteenth Amendments protections to life, liberty or property; and (2) the deprivation occurred without adequate process.  *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978).

State law determines which property rights are protected under the Fourteenth Amendment.  *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1977).  By statute,

15

New Jersey provides a police officer a property interest in the employment under N.J.S.A.

40A:14-147.  *See also id.*  It is undisputed that Thomas' employment with the Newark Police

Department is a property right and she was deprived of this right when she was terminated on

April 8, 2008.  The issue is whether Thomas was provided adequate due process of law when she

was suspended, transferred, and later terminated.

Defendants contend that Thomas was provided due process concerning the October 15,

2007 suspension.  Defendants rely on *Alvin v. Suzuki* to demonstrate that there is no due process

violation if Plaintiff has refused to avail herself of available protections.  227 F.3d 107, 116 (3d

Cir. 2000).  Defendants also argue that state remedies are adequate to satisfy due process

requirements.  *Parratt v. Taylor*, 451 U.S. 527 (1981).  Defendants argue that in New Jersey a

post deprivation hearing is considered adequate, especially when a property interest is at stake.

*Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352 (1996), *cert. denied*, 519 U.S. 911 (1996).

Defendants contend that Plaintiff did not avail herself of all procedural safeguards because she

had the right to appeal the October 15th suspension to the Civil Service Commission under

N.J.A.C. 4A:2-2.1 & 2.2(a)(3), but she did not file an appeal.  Whereas Plaintiff argues that the

Defendants did not follow the necessary procedures set forth in N.J.A.C. 4A:2-2.5 when

suspending an officer indefinitely.  Plaintiff also argues that the examples provided in *Parratt*

where post deprivation relief was deemed sufficient due process are not similar to the facts in this

case.  451 U.S. at 538-40.

The facts demonstrate that Plaintiff was provided due process for the October 15, 2007

immediate and indefinite suspension.  N.J.A.C. 4A:2-2.5 provides in relevant part:

(a) An employee must be served with a Preliminary Notice of Disciplinary

16

Action setting forth the charges and statement of facts supporting the charges (specifications), and afforded the opportunity for a hearing prior to imposition of major discipline, except:

1. An employee may be suspended immediately and prior to a hearing where it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services. However, a Preliminary Notice of Disciplinary Action with opportunity for a hearing must be served in person or by certified mail within five days following the immediate suspension.

(b) Where suspension is immediate under (a)1 and (a)2 above, and is without pay, the employee must first be apprised either orally or in writing, of why an immediate suspension is sought, the charges and general evidence in support of the charges

When Plaintiff was suspended, she was served with a suspension notice stating that immediate and indefinite suspension was necessary to maintain safety, health, order or effective discretion of public services. The notice also provided that the suspension was based on Plaintiff's failure to notify her commanding officer that she was subpoenaed as a defense witness in a criminal trial, in violation of Newark Police Department Rules and Regulations Chapter 4:4-4. Thomas was also properly served with a PNDA within 5 days of being suspended. Thus, Plaintiff's suspension was consistent with the procedures set forth in N.J.A.C. 4A:2-2.5. Furthermore, *Parratt* held that post deprivation relief satisfies due process when the state needs to take quick, decisive action and there is an adequate process in place to review the state's actions after the deprivation. 451 U.S. at 539. The Court finds that the Newark Police Department's immediate suspension of Thomas on the day the jury verdict was rendered was an appropriate measure to maintain safety and order within the police department because the criminal trial involved the death of an officer within the force, the criminal trial was highly publicized, the nature of

Thomas' testimony for the defense, Thomas' own assertions of backlash that occurred against her by other officers, and the not guilty verdict.  Thereafter, Thomas was given a hearing on October 26, 2007, which resulted in her being reinstated.  Thus, the post deprivation relief as to the suspension satisfied due process.

Defendants also argue that Thomas could have filed a grievance challenging her transfer to the communications division as discipline without just cause or she could have appealed the transfer assignment under N.J.A.C. 4A:2-5.1(a).  However, Defendants note that Thomas failed to take advantage of either due process safeguard.  The Court finds that Thomas' transfer to the communications division was not a deprivation of a property right because Thomas was never reduced in pay or rank, and therefore no due process analysis will be applied.  The Court also finds that Thomas was afforded due process regarding her termination because there was a hearing before a Police Trial Board before she was terminated and a subsequent OAL appeal and final review by the CSC.

## C.  Conspiracy under 42 U.S.C. § 1985(2)

Plaintiff's second count of the complaint alleges that Defendants were engaged in a conspiracy to interfere with her civil rights in violation of 42 U.S.C. § 1985(2).  The first half of § 1985(2) refers to conspiracies that seek to obstruct justice by intimidating or retaliating against parties or witnesses, or grand or petit jurors in federal court.  *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976).  To establish a conspiracy, a plaintiff must demonstrate that there was (1) an agreement of two or more persons to commit an unlawful act, or to commit a lawful act by unlawful means; (2) an overt act; and (3) damages.  *Sunkett v. Misci*, 183 F. Supp. 2d 691, 722

(D.N.J. 2002).  Under a conspiracy claim, the unlawful act is deterring a witness by force, intimidation or threat from attending court or testifying freely or injuring a witness who has already testified.  *See* 42 U.S.C. § 1985(2); *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 356 (3d Cir. 1986).  The essence of a conspiracy is an agreement, and an agreement only needs to exist between at least two of the named defendants.  *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989).

Defendants argue that it is undisputed that Plaintiff was not advised to lie during her testimony nor was she hindered from testifying by force, intimidation or threat.  Defendants further argue that they cannot be held liable for any injury that occurred as a result of the news articles written about Plaintiff  in the Star Ledger, NJ.com, or the SOA newsletter, nor can Defendants be held liable for comments made by AP Bogdanksi and Judge Casale.

The Plaintiff has alleged insufficient facts to demonstrate, either by direct or circumstantial evidence, that a reasonable fact finder could infer that any of the two Defendants were in agreement to either hinder Plaintiff from testifying freely or injure Plaintiff as a result of her testimony.  Plaintiff stated at her deposition that neither the prosecution nor the defense asked her to lie about the Tutt matter, and she failed to report the fact that she was subpoenaed by the defense to testify at the Tutt trial.  Thus, Plaintiff was not deterred from testifying since her commanding officer was without notice that she would be testifying for the defense.  Additionally, Plaintiff provided no evidence of a "loose agreement,"as Plaintiff suggests, between any two Defendants to injure Plaintiff due to her testimony.  Thus, Defendants are

entitled to judgment as a matter of law that Plaintiff has failed to establish a conspiracy under § 1985(2).

## D. Attorneys Fees, 42 U.S.C. § 1988

The Plaintiff has made a premature claim for attorneys fees under 42 U.S.C. § 1988, which awards attorneys fees and costs to plaintiffs who successfully enforce their § 1983 and § 1985 claims, *inter alia*. This claim cannot be assessed until after trial and only as to Plaintiff's § 1983 claim since the § 1985 claim is dismissed as a matter of law.

## E. Conscientious Employee Protection Act, N.J.S.A. 34:19-3

Plaintiff's third count of the complaint alleges that Defendants retaliation is a violation of the Conscientious Employee Protection Act ("CEPA") pursuant to N.J.S.A. 39:19-3. A *prima facie* case for retaliation under CEPA requires a plaintiff to establish (1) reasonable belief that the employer's conduct violated a law, rule, regulation, or a clear mandate of public policy; (2) the employee was engaged in an activity protected under CEPA; (3) the employee was subjected to an adverse employment decision; and (4) a causal connection exists between the whistle blowing activity and the adverse employment action. *Kolb v. Burns*, 320 N.J. Super. 467, 476 (App. Div. 1999). Plaintiff alleges that her CEPA claim arises from her November 1, 2007 complaint describing the hostile work environment and her November 23, 2007 complaint describing a hostile work environment, Defendant's retaliatory actions in response to her trial testimony, and the suggestion that Special Officer Reeves had been shot by his partner, Officer Scott. Defendants argue that no reasonable juror could conclude that Plaintiff's November 23rd complaint was reasonable or in good faith. Defendants also argue that the discipline imposed

20

after Plaintiff's November complaints were not retaliatory and contradicts Plaintiff's position that she was retaliated against the day after her testimony in the Tutt matter.

Plaintiff has insufficient evidence to satisfy the elements of a CEPA claim. Plaintiff's primary assertion is that as a result of her testimony in the Tutt matter, Defendants retaliated against her because she was investigated, suspended, charged, transferred, and terminated. The facts demonstrate that many of these alleged retaliatory acts occurred immediately after Thomas' testimony and prompted her to file complaints on November 1 and November 23, 2007. Although Thomas has attempted to construe the facts to establish this claim, no reasonable juror could infer that her November complaints as to her personal employment situation constituted a whistle blower activity. Thus, Defendants are entitled to judgment as a matter of law that Plaintiff has failed to establish a CEPA claim.

## F.  Wrongful Discharge, *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980)

Plaintiff alleges in her fifth count of the complaint that she has a common law claim for wrongful termination in violation of the principles established in *Pierce v. Ortho Pharm. Corp.* 84 N.J. 58 (1980). In *Pierce,* the court recognized a public policy exception to the at will doctrine and held that an at will employee has a cause of action for wrongful discharge if the employer has violated a clear mandate of public policy. *Id.* at 72. However, if the employee is unable to express a clear mandate of public policy then the employer may be discharged with or without cause. *Id.* Once a public policy violation is established, the employee must demonstrate that she took other actions, reasonably calculated, to prevent the objectionable conduct or the

public violation was reported to an outside authority.  *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 111 (2008).

Defendants argue that Plaintiff has failed to articulate a clear mandate of public policy that Defendants have violated to establish a *Pierce* claim.  Defendants also note that Plaintiff is not an at will employee because she has an employment contract with the City of Newark through her union, the Fraternal Order of Police ("FOP").  Plaintiff argues that the Defendants have violated the clear mandate of judicial decisions against retaliation for truthful trial testimony.

By statute, New Jersey provides that a police officer may not be discharged without just cause.  N.J.S.A. 40A:14-47.  This provision is also set forth in the Plaintiff's union contract with the FOP.  Therefore, the Plaintiff does not need protection against wrongful discharge as established in *Pierce* since Plaintiff is already protected by statute and by the terms of the FOP's contract with the City of Newark.  For these reasons, Plaintiff's common law claim for wrongful discharge fails as a matter of law.

## G.  Intentional Infliction of Emotional Distress

The sixth count in Plaintiff's complaint is a claim for intentional infliction of emotional distress ("IIED").  For this cause of action, the plaintiff must demonstrate that (1) the defendant acted intentionally or recklessly both to commit the act and to produce emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of plaintiff's emotional distress; and (4) the emotional distress suffered was so severe that no reasonable person could be expected to endure it.  *Buckley v. Trenton Sav. Fund Soc'y*, 111

N.J. 355, 366-67 (1988).  To satisfy the second element, the extreme and outrageous conduct

must go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts, §46).  The

severity of emotional distress under the fourth element raises both a question of law and fact.  *Id.*

The court decides as a matter of law whether such emotional distress can be found and the jury

decides if it has been proved.  *Id.*

Defendants argue that Plaintiff is not able to establish this claim because there are

conflicting psychological evaluations regarding Plaintiff's mental health.  Defendants note that

some reports conclude that Plaintiff's mental distress was caused by the July 18, 2005 incident

whereas other reports conclude that the alleged retaliation in response to Plaintiff's trial

testimony was the cause of Plaintiff's mental distress. Therefore, Defendants argue that Plaintiff

cannot satisfy the intent or reckless element nor identify which extreme and outrageous conduct

caused her to suffer severe emotional distress.  Defendants also suggest there were other sources

for her distress that are not defendants in this case such as the Star Ledger, NJ.com, AP

Bogdanksi, and Judge Casale.  Plaintiff counters that she has provided sufficient evidence to

suggest that Defendants acted intentionally or reckless by subjecting Plaintiff to a hostile work

environment and engaging in retaliatory actions by filing charges against her as punishment for

her testimony in the Tutt matter.  Plaintiff asserts that Defendants' conduct was extreme and

outrageous because a public entity should not retaliate against employees who testify truthfully.

Plaintiff also argues that her severe emotional distress was caused by Defendants' actions, and

the evidence shows that she was treated for emotional distress.  Plaintiff also argues, without any

legal support, that she only has to prove that Defendants' actions were a substantial factor in

contributing to her distress and not necessarily the only factor.

Although Plaintiff has properly filed a notice of tort claim on December 13, 2007 and December 18, 2007 consistent with the New Jersey Tort Claims Act's mandatory notice provision under N.J.S.A. 59:8-3, the Plaintiff is unable to sustain her cause of action for IIED. The facts demonstrate that there is insufficient evidence as a matter of law to support this claim against the Defendants.  The Plaintiff cannot establish that the Defendants intentionally or recklessly imposed discipline on the Plaintiff to produce severe emotional distress, especially since the OAL and the CSC both affirmed that discipline was warranted based on the Plaintiff's conduct.  Furthermore, imposing discipline in conformity with the Newark Police Department rules and regulations does not rise to the level of extreme and outrageous conduct.

The Plaintiff also does not have a cause of action against the Superior Officers Organization for IIED.  The appropriate cause of action against the SOA would have been a defamation claim for the two articles that negatively portrayed Thomas authored by Captain Whitley, who is not a named defendant in this case.  At this juncture, the one year statute of limitations has expired for a defamation claim and the Plaintiff's attempt to advance this claim against the SOA, instead of the author of the articles, is unsupported by any evidence that the SOA itself acted with intent or recklessness to produce severe emotional distress.   Thus, summary judgment is granted for Plaintiff's IIED claim against all Defendants.

**H.  Invasion of Privacy**

Plaintiff's seventh count of the complaint for invasion of privacy is based on two internal affairs investigations initiated after her trial testimony.  Generally, police officers have a limited

expectation of privacy compared to other public employees because it is a highly regulated

profession.  *Policemen's Benevolent Ass'n of N.J., Local 318 v. Twp. of Washington (Gloucester*

*Cnty.)*, 850 F.2d 133, 138 (3d Cir. 1988) ; *Fraternal Order of Police, Lodge No. 5 v. City of*

*Philadelphia*, 812 F.2d 105, 114 (3d Cir. 1987).  Police departments are typically described as

quasi-military organizations in which officers are subject to extensive personal regulations and

disclosures to ensure that they are always  ready for duty.  *Policemen's Benevolent Ass'n of N.J.,*

*Local 318*, 850 F.2d at 141; *McKenna v. City of Philadelphia*, 771 F. Supp. 124, 127 (E.D. Pa.

1991).  The disclosure of otherwise private information is "directly related to the interest of the

police department in selecting officers who are physically and mentally capable of working in

dangerous and highly stressful positions."  *Fraternal Order of Police, Lodge No. 5*, 812 F.2d at

114.  Accordingly, Plaintiff here has a reduced expectation of privacy regarding what she

believes to be her personal information including her financial information and prior addresses.

The Newark Police Department has a direct interest in maintaining the integrity of the police

department, especially under the present circumstances where a police officer testifies for the

defense in a murder trial of a police officer.  Additionally, there are no genuine issues of material

fact in dispute that these searches were consistent with the Newark Police Department policy,

specifically General Order 05-04, which expressly states that an internal affairs personnel has the

authority to investigate employees on their own initiative or at the direction of the Police

Director.  Thus, Plaintiff's invasion of privacy claim fails as a matter of law.

## I.  Breach of Express and Implied Contract

Plaintiff's eighth and ninth count relates to a breach of the contract between the Fraternal

Order of Police, of which Plaintiff is a member, and the City of Newark.  Plaintiff does not allege

any facts with specificity in the complaint nor in the opposition brief as to which provisions of

the contract the Defendants have breached.  The Plaintiff broadly alleges that the Defendants

breached the contract by creating a hostile work environment and retaliation.  Considering

Plaintiff has not set forth specific facts showing that there is a genuine issue for trial,  Plaintiff's

count eight and count nine for breach of express and implied contract fail as a matter of law.

**J.  Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's tenth count of the complaint is that Defendants breached the implied covenant

of good faith and fair dealing.  Defendants argue that they acted in good faith in executing the

agreed terms and acting within the reasonable expectation of the parties for the contract between

the FOP and the City of Newark.  Defendants note that the Plaintiff was paid her salary and

benefits up through the time of her retirement.  Thereafter, Plaintiff received disability retirement

benefits and health benefits, which contradicts any bad faith arguments since Plaintiff has

received all benefits that she is entitled to under the contract.  Plaintiff alleges that Defendants

retaliatory actions in response to her trial testimony were in bad faith and Plaintiff provides

specific examples such as the immediate and indefinite suspension, repeated discipline imposed

soon after her testimony, fourth month delay to investigate Plaintiff' November 1, 2007 hostile

work environment claim, the administrative termination of the investigation of the November 1

complaint,  failure to investigate the November 23, 2007 complaint, and her termination.

Implicit in every contract is a covenant of good faith and fair dealing.  *Wilson v. Amerada*

*Hess Corp.*, 168 N.J. 236, 244 (2001).  In New Jersey this implied covenant can be breached

even if a party to the contract did not breach one of the express terms of the contract. *Id.*
Additionally, an implied breach requires evidence of a bad motive. *Id.* at 249.

Here, if the Plaintiff is successful in showing that Defendants actions were retaliatory,
even if those actions were consistent with the express terms of the contract, there is a genuine
issue for trial as to the specific examples provided by the Plaintiff are evidence of bad motive and
whether Defendants breached the implied covenant of good faith and fair dealing in the contract
between the FOP and the City of Newark.  Thus, summary judgment as to count ten of the
Plaintiff's complaint is denied.

## K.  Punitive Damages

Plaintiff is seeking punitive damages against Defendants for her § 1983 claims and state
law claims.  Defendants contend that Plaintiff is not entitled to seek punitive damages from the
City of Newark nor the individual Defendants for the  § 1983 claims and the state law claims.

Punitive damages cannot be imposed against a municipality for § 1983 violations.
*Newport v. Fact Concerts*, 453 U.S. 247 (1981).  It follows that a plaintiff cannot recover
punitive damages against an individual who is sued in his official capacity because liability is
imposed against the public entity, of which the public official is an agent. *Brandon v. Holt*, 469
U.S. 464, 471-72 (1985); *Pica v. Sarno*, 907 F. Supp. 795, 805 (D.N.J. 1995).  However, punitive
damages are available against the individual Defendants in their personal capacity so long as the
Defendant's conduct was motivated by an evil motive or intent or a reckless or callous
indifference  to the federal rights of others. *Smith v. Wade*, 461 U.S. 30, 55-56 (1983).  On these
facts, the plaintiff has presented sufficient evidence to create a question of fact as to whether any

of the individual Defendant's conduct was motivated by evil motive or intent as to the § 1983 claim.

Punitive damages also cannot be brought against a municipality for state law causes of action under the New Jersey Tort Claims Act.  N.J.S.A. 59:9-2(c); *Thorpe v. Cohen*, 258 N.J. Super. 523, 531 (App. Div. 1992).  However, a punitive damages claim can be brought against public employees.  *Thorpe*, 258 N.J. Super. at 531.  A plaintiff must prove by clear and convincing evidence that (1) the likelihood, at that relevant time, that serious harm would arise from the defendant's conduct; (2) the defendant's awareness or reckless disregard of the likelihood that serious harm would arise from the defendant's conduct; (3) the defendant's conduct upon learning that the initial conduct would likely cause harm; and (4) the duration of the conduct or any concealment of it by the defendant.  N.J.S.A. 2A:15-5.12.  Here, the Plaintiff has presented sufficient evidence to create a question of fact as to whether the individual Defendants are liable for punitive damages as to Plaintiff's state law cause of action for breach of implied covenant for good faith and fair dealing.

## L. Defendants' Affirmative Defenses

Having decided the viability of Plaintiff's § 1983 claims and state law claims, the Defendants' have raised the affirmative defenses of judicial estoppel, collateral estoppel, and qualified immunity to further dismiss Plaintiff's claims as a matter of law.

### 1. Collateral Estoppel as to Plaintiff's Retaliation Claims

Defendants argue that the doctrine of collateral estoppel precludes Plaintiff from asserting

her § 1983 First Amendment retaliation claim because the OAL and the CSC have already determined that the discipline imposed on Plaintiff was proper, including her termination. Defendants further argue that Plaintiff will be unable to make a *prima facie* case for retaliation or rebut the Defendants' rationale for employment decisions as a pretext due to the fact finding of the administrative hearings.

Federal courts must refer to state law to determine the preclusive effect of a prior administrative hearing. *Pittman v. Lafontaine*, 756 F. Supp. 834, 841 (D.N.J. 1991). The doctrine of collateral estoppel bars re-litigation of any issue that was already decided in a prior action between the same parties, or a party in privity, involving a different claim or cause of action. *Zirger v. General Accident Ins. Co.*, 144 N.J. 327, 337 (1996); *State v. Gonzalez*, 75 N.J. 181, 186 (1977). For collateral estoppel to apply to foreclose re-litigation of an issue, the party asserting the doctrine must show (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) if the issue was actually litigated, that is the party being precluded had a full and fair opportunity to litigate the issue in the prior proceeding; (3) there was a final judgment on the merits; (4) If the prior determination of the issue was essential to the final judgment; and (5) if the party against whom preclusion is asserted was a party, or in privity with a party, to the prior proceeding. *Gonzalez*, 75 N.J. at 186-87. As to the first element, New Jersey courts have recognized that administrative hearings provide a full and fair opportunity for litigation of an issue. *Hackensack v. Winner*, 82 N.J. 1, 32-33 (1980).

Here, the Defendants have failed to establish the first element for the doctrine to apply, which requires the Plaintiff's retaliation claim to have been decided at the administrative hearing.

29

The issues before Judge Strauss for the OAL was whether the Plaintiff's alleged conduct warranted the discipline imposed, and to determine if Plaintiff was unable to perform her duties, and if so what would be the appropriate penalty. Thereafter, the CSC reviewed Judge Strauss' decision and affirmed the decision after conducting an independent evaluation of the factual record. Therefore, the issues before the OAL and the CSC are not identical to the issues presently before this Court where the Plaintiff is claiming that the discipline imposed, albeit consistent with factual findings and department policy, amounted to First Amendment retaliation in violation of her constitutional rights. Having failed to satisfy the first element for the doctrine of collateral estoppel to apply, it can be determined as a matter of law that collateral estoppel does not bar Plaintiff's First Amendment retaliation claim.

### 2. Judicial Estoppel

Defendants further argue that Plaintiff should be judicially estopped from raising claims for retaliation, wrongful discharge, and emotional distress because these claims were already reviewed by OAL Judge Strauss, the CSC, and Judge Karaszegi regarding Plaintiff's application for disability retirement benefits. Defendants rely on *Univ. of Tennessee v. Elliot* to argue that federal courts should give a preclusive effect to the fact finding of state administrative tribunals. 478 U.S. 788, 798 (1986). Defendants also cite to the three part test set forth in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) to demonstrate that Plaintiff has satisfied the test to be precluded from raising inconsistent evidence regarding her retaliation, wrongful discharge, and emotional distress claims. Defendants argue that Plaintiff presented evidence at the disability retirement hearing that she suffers from post traumatic stress disorder (PTSD) from the July 18,

2005 incident, and in her current application with this Court, Plaintiff has taken an inconsistent position by arguing that she suffered from PTSD due to the alleged retaliation by Defendants after her trial testimony.

Generally, judicial estoppel prevents a party from asserting a claim in a current legal proceeding that is inconsistent with the same claim that the party prevailed on in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. at 749. A party seeking to apply judicial estoppel must prove (1) clearly inconsistent positions; (2)that the party with the inconsistent position succeeded in persuading one court to accept that position, and presented an inconsistent position at a later court, thereby misleading one or both courts; and (3) whether the party with the inconsistent position derived an unfair advantage or would impose an unfair advantage on the opposing party if not estopped. *Id.* at 750-51. Applying this test to the present matter, the Defendants have not proven that the Plaintiff has taken inconsistent positions. It is of no consequence that Plaintiff cannot identify the triggering event that caused her PTSD, since the damages claimed in this proceeding are not limited to when she suffered from PTSD whereas it may have been a relevant determination in the prior proceeding to assess if Plaintiff was eligible to receive disability benefits. Plaintiff contends that in this proceeding she is seeking to recover lost wages, pension, health benefits, and her employment as a Newark Police Officer. As to the second element, Plaintiff did not succeed in the prior proceeding as she was denied lifetime health benefits. The denial of health benefits will not be addressed by this Court since arbitration is pending on the matter. Having failed to satisfy the first two elements for judicial estoppel to apply, the Defendants cannot establish that the Plaintiff derived an unfair advantage in either proceeding. Thus, it can be determined as a matter of law that judicial estoppel does not apply to

bar Plaintiff's claims for retaliation.

### 3. Qualified Immunity

The Defendants contend that the qualified immunity defense applies because all of the Defendants acted in an objectively reasonable manner.  Defendants also note that the discipline imposed against Plaintiff was affirmed by the OAL and the CSC.  Defendants argue that Lt. Dennis Sanders, Acting Chief of Police Daniel Zieser, Captain Richard Cuccolo, Lt. Crystal Burroughes, and Sgt. Beatrice Golden were performing administrative functions and the Plaintiff has asserted no evidence to support the claims filed against them, and therefore these Defendants should be dismissed.  Specifically, Defendants argue that there is no evidence showing that Lt. Sanders performed an allegedly invasive internal affairs investigation against Plaintiff.  Acting Chief Daniel Zieser's only role in this case was that he issued the personnel order placing Plaintiff on immediate and indefinite suspension.  Captain Cuccolo transferred Plaintiff's shift times while she was working in the communications division, which Defendants argue was within his managerial discretion.  Lt. Crystal Burroughes and Sgt. Beatrice Golden acted as process servers by serving Plaintiff with disciplinary charges.  Captain Caroline Clark was one of three Police Trial Board captains, but the other two captains are not a party to the suit. Defendants also note that only Sgt. Golden was deposed, and Captain Cuccolo, Acting Chief Zieser, Lt. Sanders, and Captain Clark were not.

Qualified immunity is an affirmative defense that protects a public official who performed discretionary functions that  violated a plaintiff's federally protected rights, but the

official is immune from civil damages because he acted in an objectively reasonable manner. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  The defense applies to public officials who are sued in their personal capacity, and does not apply to municipalities.  *Owen v. City of Independence*, 445 U.S. 622 (1980).  The defense provides individual officials immunity from liability as well as immunity from having to defend against a suit.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  For the defense to apply, the court must first determine whether "the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the [official's] conduct violated a constitutional right."  *Curley v. Kim*, 298 F.3d 271, 277 (3d Cir. 2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court must determine if the constitutional right was 'clearly established,' meaning "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-02.   Plaintiff argues that the right to testify freely is a clearly established First Amendment right, which the Defendants violated by retaliating against her for that speech.

The right to free speech protected under the First Amendment, and in particular the protected status of courtroom testimony, is a well established right.  *Pro v. Donatucci*, 81 F.3d 1283, 191-92 (1996).  The issue here is the distinction between the subjective intent of improper motive required for Plaintiff's First Amendment retaliation claim and the objective standard to determine if qualified immunity applies.  *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998).  In *Crawford-El v. Britton*, the Court held that when a constitutional claim requires the plaintiff to prove defendant's subjective intent, these claims should not be dismissed on a motion for summary judgment because there are additional tools within the Federal Rules of Civil Procedure to dismiss insubstantial lawsuits.  *Id.*  at 599.   The Court noted that a plaintiff can survive

summary judgment as to the qualified immunity defense if the plaintiff is able to identify affirmative evidence for a jury to find that Plaintiff has satisfied the burden of the appropriate intent for violation of the constitutional claim.  *Id.*  Here, the Plaintiff has identified affirmative evidence for a reasonable jury to find that the series of disciplinary charges filed after her trial testimony was retaliatory in violation of her First Amendment right.  However, qualified immunity does apply to the following Defendants who were performing administrative functions, rather than discretionary functions, in an objectively reasonable manner: Lt. Dennis Sanders, Lt.Crystal Burroughes, Acting Chief Daniel Zieser, and Sgt. Beatrice Golden.   Plaintiff has demonstrated no affirmative evidence to hold any of these Defendants liable for a First Amendment retaliation claim, and if they were necessary to Plaintiff's claim, all of the Defendants would have been deposed to determine their potential liability.  The remaining individual Defendants, Lt. Ivonne Roman, Police Director Garry McCarthy, Captain Richard Cuccolo, and John Siino will remain in the case, and the qualified immunity defense will be a question for the jury.

## III.  CONCLUSION

For these reasons, Defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment as to Plaintiff's first count for Section 1983 First Amendment retaliation is denied.  Summary judgment as to Plaintiff's tenth count for breach of implied covenant for good faith and fair dealing is also denied.  Plaintiff's third count for violation of Section 1988 is dismissed without prejudice, and Plaintiff's remaining counts and claims raised herein are dismissed with prejudice.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

November 10, 2011

35