NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARAMA THOMAS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>NEWARK POLICE DEPARTMENT, et al.<br><br>　　　　　Defendants. | Civil Action No. 08-cv-2452 (PGS)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

　　This matter is before the Court on a motion for Summary Judgment by Defendant, the Superior Officers' Association ("SOA"). In a previous opinion (ECF No. 138), the Court dismissed some Defendants, and thereafter other Defendants settled. As such, the SOA is the only remaining defendant in this case. Plaintiff brought an action against the SOA pursuant to 42 U.S.C, § 1983 for allegedly violating her first amendment rights to speak truthfully at a trial. SOA seeks summary judgment in this matter because SOA is not a state actor within the meaning of 42 U.S.C. § 1983.

I.

　　Since the Court's prior opinion (ECF No. 137) provides a complete recitation of the facts of this case, only a brief background of the facts are presented to address this motion.

　　Since July 29, 1996, Plaintiff, Karama Thomas ("Thomas"), served as a police officer for the Newark Police Department ("Department"). On July 18, 2005, Detective Thomas responded to a shooting where two fellow officers were shot, one of whom, Special Officer Reeves, was fatally wounded (the "Tutt incident").

Approximately two years after the shooting (September 2007), Thomas was subpoenaed by both the Essex County prosecutor and a defense attorney to testify at the trial of Tutt for the murder of Special Officer Reeves. As it turns out, the prosecutor did not call Thomas as a witnesses, but the defense did. Thomas testified that she was located at a daycare center on the second or third floor when she heard gun shots. She looked out the window and observed Tutt fleeing the scene. Thomas testified that she never lost sight of Tutt from the time she first observed him when she chased him down and arrested him on Chancellor Avenue in Newark. During this time, Thomas testified that she never observed Tutt with a gun, and she did not allow anyone including Jalisa Tutt to approach Tutt at the time of the arrest (which inferred to the jury that Tutt could not have passed the murder weapon to Jalisa).

The day after this testimony, various news outlets including the Star Ledger, reported on Thomas' trial testimony. Thereafter, the jury rendered a verdict of not-guilty for the murder of Special Officer Reeves in the Tutt matter; but found Tutt guilty of reckless manslaughter, among other things. Since Thomas' testimony was different from other officers and witnesses, it caused a stir within the Department.

On the day of the verdict, Thomas was placed on immediate and indefinite suspension for failing to comply with Department regulations. Those regulations require police officers to give advance notice to a superior officer of any appearance in court. Thomas had failed to do so and was suspended. That suspension was later reversed.

In the days following the jury verdict, Defendant, SOA published its monthly newsletter which included an article titled "A Very Dark Day in Newark" authored by Captain Mark Whitley (Whitley Article)  The Whitley Article blamed Thomas' testimony as the reason for the not guilty verdict on the murder charge. That article reads in part:

> When we testify in court, we swear an oath to tell the truth. We take that oath very seriously. Perhaps this officer truly felt that what she related on the stand was the truth, to the best of her knowledge. But when faced with the immutable laws of physics and basic rules of common sense, this officer's story was impossible to believe. She could not have believed it her self. Yet she stuck to the story despite overwhelming proof that she could not have fully observed everything she claims she observed. And this stubborn refusal to back off this fairy tale of a story provided reasonable doubt to the jury. And as a result a cop killer will get away with murder. (DEF Brief pg. 6, ¶ 2)

The SOA is a not for profit non-governmental corporation and the collective bargaining agent for Sergeants, Lieutenants and Captains of the Department. According to its corporate papers, the SOA was established to enhance the health, safety, and welfare of its membership. Despite the fact that Plaintiff noted in the Compliant that SOA was "an independent organization" (Complaint, paragraph 9), she alleges it is a state actor because (1) the Department provides free office space to SOA within the police administration building; (2) the SOA collects dues from its members by having the dues deducted from the members' pay by the Department; and (3) from time to time the SOA will comment on proposed police regulations. In addition, Plaintiff argues that the author of the article, Captain Whitley, is a union representative for the SOA and its First Vice President, but he is on paid release or leave from the Department in order to serve in his union capacity.

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for

the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment*.*" *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

### III.

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish

that the challenged conduct constitutes "state action"."  *United States v. International Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. N.Y. 1991).  See also, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Here, the issue is whether SOA, a union of public employees, is a state actor.

There are several cases which delve into whether the activities of a public employee union may constitute state action.  *See Leahy v. Board of Trustees*, 912 F.2d 917 (7th Cir. Ill. 1990); *Major v. Southeastern Pa. Transp. Auth.*, 1993 U.S. Dist. LEXIS 11813 (E.D. Pa. 1993); *Tynes v. Ill. Veterans Homes & Counsel*, 2012 U.S. LEXIS 143192 (C.D. Ill. July 16, 2012).

To withstand this motion, the undisputed facts must show that the SOA, was acting under the color of state law when it published the Whitley Article. *Leahy*, 912 F. 2d at 921.  Generally, a private defendant acts under the color of state law when it is a willful participant in joint action with the state. *Id.*  In *Leahy*, the Plaintiff contended that the union's refusal to bring an arbitration against a public employer constituted joint action depriving him of his right to free speech.  The Court dismissed the cause of action for each of the state actions. *Id.* at 919 - 921. Similar to *Leahy*, there are not facts that show that the SOA was a willful participant or jointly engaged in any action with the Department. See, *Major v. Southeastern Pa. Transp. Auth.*, 1993 U.S. Dist. LEXIS 11813 (E.D. Pa. 1993).  The Whitley Article does not advocate the imposition of a wall of silence against Thomas as she alleges, nor the suspension of Thomas due to her failure to follow police regulations.  But for the timing of the events, there are no facts that connect the SOA's publication of the Whitley Article to other events of the Department.

Although the cases involving unions focus on the "willful participant" standard, the Supreme Court has noted that state action may be found on other factors.  A challenged activity may be deemed state action when; 1) it results from the State's exercise of "coercive power"; (2)

5

when the State provides significant encouragement, either overt or covert; (3) when a private actor operates as a willful participant in joint activity with the State or its agents; (4) when a nominally private entity is controlled by an agency of the State; (5) when a private entity has been delegated a public function by the State; or (6) when the private entity is entwined with governmental policies, or the government is entwined in its management or control. *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.* 531 U.S. 288, 296 (2001). In short, the analysis should focus on whether the challenged action can be "fairly attributed to the state**."** *Id* at 306. Under any of these factors, the publishing of the Whitley Article is insufficient to show state action. See, *Rendell-Baker v. Kohn*, 457 U.S. 830, 836 (1982). As discussed above, the SOA is not pervasively entwined with the Department simply because its members work for the Department. SOA is as a collective bargaining agent for Sergeants, Lieutenants and Captains, and its goal is to enhance the health, safety, and welfare of its members. If anything, the role of SOA is adversarial to the Department, especially during contract negotiations. The publication of a newsletter is a typical union communication and does not prove joint activity. In short, Thomas has not asserted any facts that would show that SOA was so entwined with the Department that its actions constitute state action.

Also, Thomas argues that state action occurred because the state actor (Department) is responsible for a private decision when it exercised coercive power or has provided such significant encouragement, either overt or covert over SOA. Here, Plaintiff has not shown any such coercive power or influence over SOA. *Lugar v Edmonson Oil Co*., 457 U.S. 922, 941 (1982).

ORDER

For the reasons set forth above;

IT IS on this 7th day of March, 2013

ORDERED that Defendant, Superior Officers' Association motion for summary judgment (ECF No. 170) is granted.  The case is closed.

*s/Peter G. Sheridan*  
PETER G. SHERIDAN, U.S.D.J.
